James M. **ROBERTSON**

v.

**DAILEY ELECTRIC SUPPLY CO., and Lucius L. Dailey.**

**No. CA 3–4751–C.**

United States District Court, N. D. Texas, Dallas Division.

Jan. 21, 1974.

Herbert H. Landau, Dallas, Tex., for plaintiff.

Barney B. Hemphill, Jr., Dallas, Tex., for defendants.

## OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiff James M. Robertson sued his employer Lucius L. Dailey, doing business as Dailey Electric Supply Co., under the Fair Labor Standards Act of 1938, as amended,[1] for back wages and overtime pay in the amount of $1,444 and an additional equal sum as liquidated damages. Dailey's defense, simply stated, is that he is not covered by the statute. I agree, for reasons detailed below, and Robertson is entitled to nothing.

The pleadings and the evidence presented during a trial before the Court show that during the time in question [2] Robertson was the solitary employee of Dailey's small business. For all practical purposes, Mr. Dailey *was* Dailey Electric Supply Co. Dailey hired Robertson as a helper for $50 per week.

The business consisted primarily of Dailey's personal purchases in and around Dallas, Texas, of electrical supplies and merchandise (for example, floodlights), then delivering them to his warehouse where he stored them until he found a buyer by personally calling on the local trade. He filled the orders from his warehouse and delivered the goods to his customers. Although many or most of these items were manufactured outside Texas, he bought them in Texas and sold them in Texas. He did no assembling or manufacturing; the character of the merchandise was not changed in any manner.

Robertson's role in the business was no doubt a helpful one, although relatively simple: he answered the telephone, waited on customers, filled orders, kept some books and manned the office when Dailey was absent.

The statute under which this suit was brought provides in part that an employer must pay a specified minimum wage "to each of his employees who in any workweek is engaged in commerce or in

---

1. 29 U.S.C. § 201 et seq.

2. April 6 to December 28, 1970.

the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206 (a). It further requires that an employer pay to covered employees overtime wages of not less than one and one-half times the regular rate for each hour after the fortieth hour in any one workweek. 29 U.S.C. § 207(a)(1).

Robertson contends that Dailey violated the act in two respects—by failing to pay the minimum wage (then $1.60 per hour), and failing to pay the prescribed overtime (at least $2.40 per hour for each hour after 40 hours a week).

It is obvious that Robertson is correct only if (1) Dailey's business was "an enterprise engaged in commerce or the production of goods for commerce" or (2) Robertson himself was an employee "engaged in commerce or the production of goods for commerce."

■■ The first of those questions is easily answered in the negative because of the statutory definition of "enterprise engaged in commerce . . . ." Such an enterprise, according to 29 U.S. C. § 203(s), is one which "has *employees* engaged in commerce or in the production of goods for commerce . . ." and which has certain annual gross sales volumes. (Emphasis added.) It is undisputed that Robertson was Dailey's *only* employee; thus, the Dailey firm is not a covered enterprise because it did not have "employees".

The second question requires only slightly more discussion. Dailey cited the Court to the case of Shultz v. National Electric Co., 414 F.2d 1225 (10th Cir. 1969), because of its similarity to this case. National Electric Co., like Dailey Electric Supply Co., operated only locally and sold electrical supplies and fixtures at retail. National Electric received goods shipped from outside Oklahoma into the state and stored them in its warehouse. The question in the case was simply "whether the interstate movement of the merchandise ended at the warehouse dock when it was placed there by employees of the common carrier, or when it was placed in the warehouse by employees of the corporation." 414 F.2d at 1226. Affirming the district court, the Tenth Circuit held that the interstate movement of the merchandise ceased when it was unloaded on the dock or the warehouse floor of the defendant firm; "[a]ny movement thereafter was of a purely local nature." *Id.* at 1227. The court ruled that the plaintiff, the Secretary of Labor, was not entitled to an injunction enjoining the defendant from violating the Fair Labor Standards Act.

■■ It seems to me that the facts in this case are even more in defendant's favor than they were in the Oklahoma case. For one thing, in almost every instance Dailey himself brought the goods to his warehouse after purchasing them elsewhere in Dallas; their interstate movement had ended before he or Robertson ever touched them. There was no evidence that Dailey took orders to be filled by causing the shipment of goods from outside Texas; he took orders for merchandise that he already had on a shelf in his warehouse.

If Dailey was not engaged in interstate commerce, then Robertson certainly was not. His duties have already been described; apparently they never required him to move from the office and warehouse. The items he handled had already ended their interstate movement before he saw them. In the Tenth Circuit case quoted above, the Court cited McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943), for the proposition that employees who handle goods after acquisition by a merchant for general local disposition are not engaged in interstate commerce for purposes of federal wage and hour laws. 414 F.2d at 1228. Robertson was such an employee.

Because Robertson has failed to show by a preponderance of the evidence that he was engaged in interstate commerce and was thus covered by the act, judgment will be entered for the defendant Dailey. Dailey's attorney is requested to present a form of judgment to the Court.